## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THE LOVESAC COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. |
| | ) | |
| vs. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| CUSHY, INC. dba HOMEBODY, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff the Lovesac Company ("Lovesac") for its complaint against Defendant Cushy, Inc. *dba* Homebody ("Homebody") alleges as follows:

## THE PARTIES

1.      Plaintiff Lovesac is a Delaware corporation with a registered agent at 251 Little Falls Dr, Wilmington, DE 19808 and a principal place of business at Two Landmark Square, Suite 300, Stamford, CT 06901.

2.      Defendant Homebody is a Delaware corporation with a registered agent at 108 W 13th Street, Suite 100, Wilmington, DE 19801 and a principal place of business at 1370 N Saint Andrews Place, Los Angeles, CA 90028.

## JURISDICTION AND VENUE

3.      This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, 35 U.S.C. §§ 100, *et seq*.

4.      This Court has personal jurisdiction over Homebody because Homebody is an entity organized and existing under the laws of the State of Delaware with a registered agent at 108 W 13th Street, Suite 100, Wilmington, DE 19801.

5.      Venue is proper in this Court under 28 U.S.C. § 1400(b) because Homebody is an entity organized and existing under the laws of the State of Delaware and has a registered agent at 108 W 13th Street, Suite 100, Wilmington, DE 19801 and therefore resides in the District of Delaware.

## BACKGROUND

6.      Lovesac was founded in 1995, when founder Shawn Nelson built the original eight-foot-wide foam-filled "Lovesac" in the basement of his parents' Utah home.

7.      In the early 2000s, Lovesac continued its innovative approach to furniture, and in 2005 invented an entirely new category of modular furniture. Lovesac's Sactionals® line of modular furniture introduced interchangeable furniture components designed such that numerous different product configurations could be created using a selection of modular components. Lovesac sought patents covering its innovative new design beginning in June 2005.

8.      The Sactionals innovative, patented 2-piece system leverages the interchangeability of its base and side components to allow for the construction of dozens of possible configurations, a few of which are shown below:



9.      In addition to being modular and reconfigurable, Sactionals separate back and side pieces makes Sactionals the perfect fit for smaller spaces where traditional non-modular furniture is difficult to move or install.

10.     Beginning in 2022, Homebody introduced infringing knock-offs of the Lovesac Sactionals modular furniture product.  Homebody's entire line of products copy innovative elements of Lovesac's Sactionals and infringe Lovesac's patent rights:



11.     As the specification for exemplary U.S. Patent No. 7,213,885 (the "'885 Patent") explains, customers appreciate furniture that can be easily cleaned, moved, and stored with ease, and which provides multiple functions.  *See, e.g.*, '885 Patent (Ex. A), at 1:24-53.  One aspect of the invention of the '885 Patent relates to a "modular furniture assembly that can be assembled, disassembled, rearranged, moved, and cleaned in a quick and efficient manner with minimal effort."  *Id.* at 1:57-59.

12.     According to the '885 Patent, "base(s) and transverse member(s) can be placed in a variety of different positions so as to form a variety of different chairs."  *Id.* at 2:15-17.  The Patent describes this relationship as follows:

> In one embodiment, the base and transverse member are sized and configured in a defined spatial relationship. For example, in such an embodiment, the length (x) of the base is substantially equal to the length (x) of the transverse member, and the length (x) of the base is Substantially equal to the sum of the width (y) of the base and the width (z) of the transverse member. Thus, x is substantially equal to y+z.

> This relationship enables the convenient formation of a variety of different types, sizes and configurations of furniture assemblies.

*Id.* at 2:18-23.

13.     The patent illustrates an example of this spatial relationship in Figure 1:



**Fig. 1**

*Id.* at Fig. 1.  The '885 Patent discloses that this "standardized configuration of bases and transverse members enables a user to form a variety of different types and configurations of furniture assemblies."  *Id.* at 2:30-33

14.     The '885 Patent discloses other benefits of the Sactionals innovative design.  For example, the '885 Patent discloses that such configurations are advantageous in manufacturing, "because a manufacturer can produce a series of bases that have a substantially similar configuration and a series of transverse members that have a substantially similar configuration,

then arrange (or allow the end user to arrange) the bases and transverse members into a variety of configurations to form different types of furniture." *Id.* at 2:34-40.

15.     This flexibility also provides an advantage to the customer, who can combine bases and transverse members into many different configurations. *See, e.g.*, *id.* at 2:40- 43.

16.     The '885 Patent further discloses that the modular nature of the claimed invention is useful in moving furniture pieces into place:

> [T]he present invention enables the consumer to have a piece of furniture in a remote location where previously other pieces of furniture could not be moved due to their bulkiness and/or size. The present invention is easily disassembled, thus enabling a consumer to locate the base(s) and/or transverse member(s) in an otherwise inaccessible location and then assemble them to form a furniture assembly.

*Id.* at 3:1-8.

17.     In addition, the claimed invention of the '885 Patent also includes "removable outer liners" for the transverse members and the base, which allows a customer to easily clean and launder the modular furniture assembly. *See, e.g.*, *id.* at 3:18-20.

18.     The '885 Patent further discloses exemplary coupler devices that allow the bases and transverse members to be configured in numerous different ways, as shown in the exemplary figure below:



*Id.* at Fig. 8.

19. The Lovesac Sactionals product has received countless positive reviews from critics and influencers alike. For example, in one review titled "Lovesac Sactional Review: My Recommendation After 4 Years," a reviewer summarized their opinion as follows:

> The Lovesac Sactional is the most versatile couch I have ever owned. It is also the most durable. I bought my first Sactional back in July of 2013. Just recently I bought another back and seat to expand it as my family is growing. Although this furniture isn't cheap, you definitely get what you pay for which is quality that will stand the test of time and kids.

Ben Trapskin, *Lovesac Sactional Review: My Recommendation After 4 Years*, THE SLEEP SHERPA, Oct. 13, 2021, available at https://sleepsherpa.com/lovesac-sactional-review-recommendation-4-years/ (Ex. E).

20. Homebody began manufacturing and selling furniture in 2022, all of which copies many of Lovesac's patented innovations. Homebody competes with Lovesac in the marketplace for modular furniture and Homebody is aware of Lovesac and its Sactionals, as evidenced by self-serving product comparisons from Homebody's own website:

| FEATURES | HOMEBODY | RH CLOUD | LOVESAC |
|---|---|---|---|
| Overall modularity | 3 | 1 | 3 |
| Reconfiguration options | 3 | 1 | 3 |
| Ease of reconfiguring | 3 | 1 | 2 |
| Cushions | 3 | 3 | 1 |
| Head Support | 3 | 0 | 0 |
| Leg Support / Recliner | 3 | 0 | 0 |
| Arms | 3 | 2 | 2 |
| Price | 2 | 1 | 2 |
| TOTAL | 23 | 9 | 13 |

https://stayhomebody.com/blogs/comfy-101/choosing-your-sectional-comparison-guide

21.     Lovesac is the owner of United States Patent Nos. 7,213,885 (the "'885 Patent"), 7,419,220 (the "'220 Patent"), 10,806,261 (the "'261 Patent"), and 10,143,307 (the "'307 Patent") (collectively, the "Asserted Patents").  *See* Exhibits A-D.

22.     Lovesac marks is products, including its Sactionals line of products, in compliance with the Patent Marking Statute, 35 U.S. Code § 287.

23.     Homebody advertises many different products, and all are variations of a modular design.  One Homebody product is "The Single Seat Armchair" which does not include a recline function, and is depicted below:



https://stayhomebody.com/products/the-single-seat-armchair

24.     Another Homebody design is "The Recliner" which includes a recline function:



https://stayhomebody.com/products/the-recliner

25.     An example of a Homebody product is the "Marshmallow 7 Seat Sectional with 1 Recliner" which includes a recline function:



https://stayhomebody.com/products/7-seat-sectional-sofa-1-recliner-white-velvet

26.     Homebody's products utilize the same base components, including interchangeable armrests/backrests, back and seat cushions, liners, and couplers:



*Homebody Couch Assembly Video*, available at https://youtu.be/hE3KiP2Quog (hereinafter "Homebody Assembly Video") (time at 0:02)

27.     Due to the modularity of the Homebody products—an advantageous and patented design aspect copied from Lovesac—there is an infinite number of unique Homebody furniture combinations that can be formed.  Furthermore, every potential Homebody furniture combination infringes at least one representative claim of the Asserted Patents.  Hereinafter, Homebody products will be distinguished as furniture combinations with at least one non-recliner seat ("Homebody Sectionals") and furniture combinations with at least one recliner seat ("Homebody Recliners") (collectively, the "Accused Products").

## COUNT I – INFRINGEMENT OF U.S. PATENT NO. 7,213,885

28.     Lovesac incorporates all of the allegations of paragraphs 1-27 as if fully set forth herein.

29.     On May 8, 2007, the United States Patent Office duly and legally issued the '885 Patent.  A true and correct copy of the '885 Patent is attached as Exhibit A.

30.     Lovesac owns the '885 Patent by assignment.

31.     Lovesac provided actual notice to Homebody of its infringement of the '885 Patent prior to the filing of this lawsuit.

32.     As a non-limiting example, set forth below is an exemplary infringement claim chart for claim 18 of the '885 Patent in connection with the Accused Products.  This claim chart is based on publicly available information, and Lovesac reserves the right to modify this claim chart, including, for example, on the basis of information about the Accused Products that Lovesac obtains in discovery.

| US 7,213,885 | Homebody Sectionals |
|---|---|
| **Claim 18** ||
| **18P.** A modular furniture assembly comprising: | To the extent that the preamble is limiting, Homebody Sectionals comprise a modular furniture assembly.<br><br><br>https://stayhomebody.com/products/the-couch |
| **18a.** a base configured such that the base has a **length (x)** and a **width (y)**; | The Homebody Sectionals comprise a base configured such that the base has a length (x) and a width (y): |



| | |
|---|---|
| **18b.** a transverse member having a **length (x′)** and a **width (z)**; | The Homebody Sectionals comprise a transverse member having a length (x′) and a width (z): |



| | |
|---|---|
| **18c.** wherein the base and the transverse member have a defined spatial relationship, the defined spatial relationship being: the **length (x)** of the base is substantially equal to the **length (x′)** of the transverse member, and | The Homebody Sectionals comprise a base and transverse member having a defined spatial relationship, the defined spatial relationship wherein: the length (x) of the base is substantially equal to the length (x′) of the transverse member. |



| **18d.** the **length (x)** of the base is substantially equal to the sum of the **width (y)** of the base and the **width (z)** of the transverse member, such that different furniture configurations can be formed. | The Homebody Sectionals comprise a base and transverse member having a defined spatial relationship, the defined spatial relationship wherein: the length (x) of the base is substantially equal to the sum of the width (y) of the base and the width (z) of the transverse member, such that different furniture configurations can be formed. |



33.     Additionally, Homebody has and continues to indirectly infringe the asserted claims of the '885 Patent, in violation of 35 U.S.C. § 271(b), by actively inducing users of the Accused Products to directly infringe the asserted claims of the '885 Patent.  In particular, (a) Homebody has actual knowledge of the '885 Patent, at least because Lovesac notified Homebody of its infringement, (b) Homebody intentionally causes, urges, or encourages users of the Accused Products to directly infringe one or more claims of the '885 Patent by promoting, advertising, and instructing customers and potential customers about the Accused Products and uses thereof, including infringing uses (*see* Homebody Assembly Video), (c) Homebody knows (or should know) that its actions will induce users of Accused Products to directly infringe one or more claims

the '885 Patent, and (d) users of the Accused Products directly infringe one or more claims of the '885 Patent.

34.     Additionally, Homebody has and continues to indirectly infringe one or more of the claims of the '885 Patent, in violation of 35 U.S.C. § 271(c), by offering to sell or selling within the United States, and/or importing into the United States, components in connection with the Accused Products that contribute to the direct infringement of the '885 Patent by users of the Accused Products.  In particular, (a) Homebody has actual knowledge of the '885 Patent, (b) Homebody offers for sale, sells, and/or imports, in connection with the Accused Products, one or more material components of the invention of the '885 Patent that are not staple articles of commerce suitable for substantial non-infringing use, (c) Homebody knows (or should know) that such component(s) were especially made or especially adapted for use in an infringement of the '885 Patent, and (d) users of devices that comprise such material component(s) directly infringe one or more claims of the '885 Patent.

35.     Homebody's infringement of the '885 Patent is also willful because Homebody (a) had actual knowledge of the '885 Patent, (b) engaged in the aforementioned activity despite an objectively high likelihood that Homebody's actions constituted infringement of the '885 Patent, and (c) this objectively-defined risk was either known or so obvious that it should have been known to Homebody.

36.     Additional allegations regarding Homebody's pre-suit knowledge of the '885 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

37.     Lovesac is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '885 Patent.

38.     Lovesac is entitled to recover from Homebody all damages that Lovesac has sustained as a result of Homebody's infringement of the '885 Patent, including, without limitation, a reasonable royalty and lost profits.

39.     Homebody's infringement of the '885 Patent was and continues to be willful and deliberate, entitling Lovesac to enhanced damages.

### COUNT II – INFRINGEMENT OF U.S. PATENT NO. 7,419,220

40.     Lovesac incorporates all of the allegations of paragraphs 1-39 as if fully set forth herein.

41.     On September 2, 2008, the United States Patent Office duly and legally issued the '220 Patent. A true and correct copy of the '220 Patent is attached as Exhibit B.

42.     Lovesac owns the '220 Patent by assignment.

43.     Lovesac provided actual notice to Homebody of its infringement of the '220 Patent prior to the filing of this lawsuit.

44.     As a non-limiting example, set forth below is an exemplary infringement claim chart for claim 4 of the '220 Patent in connection with the Accused Products. This claim chart is based on publicly available information, and Lovesac reserves the right to modify this claim chart, including, for example, on the basis of information about the Accused Products that Lovesac obtains in discovery.

| US 7,419,220 | Homebody Sectionals |
|---|---|
| | **Claim 4** |

| **4P.** A modular furniture assembly comprising: | To the extent that the preamble is limiting, Homebody Sectionals comprise a modular furniture assembly.<br><br><br><br>https://stayhomebody.com/products/the-couch |
| **4a.** a base adapted to support the weight of a user while sitting on the base, the base having a **plurality of abutting surfaces** and **at least one aperture** formed therein; | Homebody Sectionals comprise a base adapted to support the weight of a user while sitting on the base, the base having a plurality of abutting surfaces and at least one aperture formed therein. |



| | |
|---|---|
| **4b.** a base liner adapted to detachably cover at least a portion of the base, the base liner having a plurality of abutting surfaces and at least one aperture formed therein; | Homebody Sectionals comprise a base liner adapted to detachably cover at least a portion of the base, the base liner having a plurality of abutting surfaces and at least one aperture formed therein.<br><br><br>[Homebody Assembly Video at 0:23](#). |



| | |
|---|---|
| **4c.** a transverse member having an abutting surface and **at least one aperture** formed therein, wherein the abutting surfaces of the base and the abutting surface of the transverse member are | Homebody Sectionals comprise a transverse member having an abutting surface and at least one aperture formed therein, wherein the abutting surfaces of the base and the abutting surface of the transverse member are adapted to facilitate detachable coupling of the base to the transverse member, the abutting surface of the transverse member corresponding with at least one of the abutting surfaces of the base when the base is placed in an abutting relationship with the transverse member. |

| | |
|---|---|
| adapted to facilitate detachable coupling of the base to the transverse member, the abutting surface of the transverse member corresponding with at least one of the abutting surfaces of the base when the base is placed in an abutting relationship with the transverse member; | <br>[Homebody Assembly Video at 0:30](Homebody Assembly Video at 0:30).<br> |
| **4d.** a transverse member liner adapted to detachably cover at least a portion of the transverse member, the | Homebody Sectionals comprise a transverse member liner adapted to detachably cover at least a portion of the transverse member, the transverse member liner having an abutting surface and at least one aperture formed therein. |

| | |
|---|---|
| transverse member liner having an abutting surface and **at least one aperture** formed therein; and | <br><br>Homebody Assembly Video at 0:25.<br><br><br><br>Homebody Assembly Video at 0:30. |
| **4e.** a coupler manually, detachably coupling the base to the transverse member when the abutting surface and the aperture of the transverse | Homebody Sectionals comprise a coupler manually, detachably coupling the base to the transverse member when the abutting surface and the aperture of the transverse member is substantially aligned with an abutting surface of the base and the aperture of the base, respectively, and the base and the transverse member are positioned on a floor, and such that the base is adapted to be manually, detachably coupled to the transverse member in a first position and such that the base is adapted to be manually, detachably coupled to the transverse member in a second position, wherein the coupler is pushed downward coupling the transverse member to the base thereby allowing the coupler to be inserted or removed while the base and the transverse member are positioned on the floor in an upright orientation. |

member is substantially aligned with an abutting surface of the base and the aperture of the base, respectively, and the base and the transverse member are positioned on a floor, and such that the base is adapted to be manually, detachably coupled to the transverse member in a first position and such that the base is adapted to be manually, detachably coupled to the transverse member in a second position, wherein the coupler is pushed downward coupling the transverse member to the base thereby allowing the coupler to be inserted or removed



Homebody Assembly Video at 0:30.



Homebody Assembly Video at 0:34.

| | |
|---|---|
| while the base and the transverse member are positioned on the floor in an upright orientation. | <br>Homebody Assembly Video at 0:43.<br><br><br>Homebody Assembly Video at 0:42. |

45.    Additionally, Homebody has and continues to indirectly infringe the asserted claims of the '220 Patent, in violation of 35 U.S.C. § 271(b), by actively inducing users of the Accused Products to directly infringe the asserted claims of the '220 Patent. In particular, (a) Homebody has actual knowledge of the '220 Patent, at least because Lovesac notified Homebody of its infringement, (b) Homebody intentionally causes, urges, or encourages users of the Accused Products to directly infringe one or more claims of the '220 Patent by promoting, advertising, and

24

instructing customers and potential customers about the Accused Products and uses thereof, including infringing uses (*see* Homebody Assembly Video), (c) Homebody knows (or should know) that its actions will induce users of Accused Products to directly infringe one or more claims the '220 Patent, and (d) users of the Accused Products directly infringe one or more claims of the '220 Patent.

46.     Additionally, Homebody has and continues to indirectly infringe one or more of the claims of the '220 Patent, in violation of 35 U.S.C. § 271(c), by offering to sell or selling within the United States, and/or importing into the United States, components in connection with the Accused Products that contribute to the direct infringement of the '220 Patent by users of the Accused Products. In particular, (a) Homebody has actual knowledge of the '220 Patent, (b) Homebody offers for sale, sells, and/or imports, in connection with the Accused Products, one or more material components of the invention of the '220 Patent that are not staple articles of commerce suitable for substantial non-infringing use, (c) Homebody knows (or should know) that such component(s) were especially made or especially adapted for use in an infringement of the '220 Patent, and (d) users of devices that comprise such material component(s) directly infringe one or more claims of the '220 Patent.

47.     Homebody's infringement of the '220 Patent is also willful because Homebody (a) had actual knowledge of the '220 Patent, (b) engaged in the aforementioned activity despite an objectively high likelihood that Homebody's actions constituted infringement of the '220 Patent, and (c) this objectively-defined risk was either known or so obvious that it should have been known to Homebody.

48.     Additional allegations regarding Homebody's pre-suit knowledge of the '220 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

49.     Lovesac is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '220 Patent.

50.     Lovesac is entitled to recover from Homebody all damages that Lovesac has sustained as a result of Homebody's infringement of the '220 Patent, including, without limitation, a reasonable royalty and lost profits.

51.     Homebody's infringement of the '220 Patent was and continues to be willful and deliberate, entitling Lovesac to enhanced damages.

## COUNT III – INFRINGEMENT OF U.S. PATENT NO. 10,806,261

52.     Lovesac incorporates all of the allegations of paragraphs 1-51 as if fully set forth herein.

53.     On October 20, 2020, the United States Patent Office duly and legally issued the '261 Patent. A true and correct copy of the '261 Patent is attached as Exhibit C.

54.     Lovesac owns the '261 Patent by assignment.

55.     Lovesac provided actual notice to Homebody of its infringement of the '261 Patent prior to the filing of this lawsuit.

56.     As a non-limiting example, set forth below is an exemplary infringement claim chart for claim 14 of the '261 Patent in connection with the Accused Products. This claim chart is based on publicly available information, and Lovesac reserves the right to modify this claim chart,

including, for example, on the basis of information about the Accused Products that Lovesac obtains in discovery.

| US 10,806,261 | Homebody Sectionals |
|---|---|
| | **Claim 14** |
| **14P.** A modular furniture assembly comprising: | To the extent that the preamble is limiting, Homebody Sectionals comprise a modular furniture assembly.  https://stayhomebody.com/products/the-couch |
| **14a.** a base member; | Homebody Sectionals comprise a base member. Homebody Assembly Video at 0:30. |

| | |
|---|---|
| **14b.** a transverse member having **a hole** therein; | Homebody Sectionals comprise a transverse member having a hole therein.<br><br> |
| **14c.** a cover extending over the transverse member, the cover also having **a hole** that is aligned with the hole of the transverse member; and | Homebody Sectionals comprise a cover extending over the transverse member, the cover also having a hole that is aligned with the hole of the transverse member.<br><br><br>Homebody Assembly Video at 0:30. |

| **14d. a coupler** configured to selectively couple the base to the transverse member, wherein the coupler selectively extends through the hole of the transverse member to thereby couple the base to the transverse member. | Homebody Sectionals comprise a coupler configured to selectively couple the base to the transverse member, wherein the coupler selectively extends through the hole of the transverse member to thereby couple the base to the transverse member.   [Homebody Assembly Video at 0:30](). |

57.     Additionally, Homebody has and continues to indirectly infringe the asserted claims of the '261 Patent, in violation of 35 U.S.C. § 271(b), by actively inducing users of the Accused Products to directly infringe the asserted claims of the '261 Patent. In particular, (a) Homebody has actual knowledge of the '261 Patent, at least because Lovesac notified Homebody of its infringement, (b) Homebody intentionally causes, urges, or encourages users of the Accused Products to directly infringe one or more claims of the '261 Patent by promoting, advertising, and instructing customers and potential customers about the Accused Products and uses thereof, including infringing uses (*see* Homebody Assembly Video), (c) Homebody knows (or should know) that its actions will induce users of Accused Products to directly infringe one or more claims the '261 Patent, and (d) users of the Accused Products directly infringe one or more claims of the '261 Patent.

58.     Additionally, Homebody has and continues to indirectly infringe one or more of the claims of the '261 Patent, in violation of 35 U.S.C. § 271(c), by offering to sell or selling within the United States, and/or importing into the United States, components in connection with the Accused Products that contribute to the direct infringement of the '261 Patent by users of the Accused Products. In particular, (a) Homebody has actual knowledge of the '261 Patent, (b) Homebody offers for sale, sells, and/or imports, in connection with the Accused Products, one or more material components of the invention of the '261 Patent that are not staple articles of commerce suitable for substantial non-infringing use, (c) Homebody knows (or should know) that such component(s) were especially made or especially adapted for use in an infringement of the '261 Patent, and (d) users of devices that comprise such material component(s) directly infringe one or more claims of the '261 Patent.

59.     Homebody's infringement of the '261 Patent is also willful because Homebody (a) had actual knowledge of the '261 Patent, (b) engaged in the aforementioned activity despite an objectively high likelihood that Homebody's actions constituted infringement of the '261 Patent, and (c) this objectively-defined risk was either known or so obvious that it should have been known to Homebody.

60.     Additional allegations regarding Homebody's pre-suit knowledge of the '261 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

61.     Lovesac is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '261 Patent.

62.     Lovesac is entitled to recover from Homebody all damages that Lovesac has sustained as a result of Homebody's infringement of the '261 Patent, including, without limitation, a reasonable royalty and lost profits.

63.     Homebody's infringement of the '261 Patent was and continues to be willful and deliberate, entitling Lovesac to enhanced damages.

## COUNT IV – INFRINGEMENT OF U.S. PATENT NO. 10,143,307

64.     Lovesac incorporates all of the allegations of paragraphs 1-63 as if fully set forth herein.

65.     On December 4, 2018, the United States Patent Office duly and legally issued the '307 Patent. A true and correct copy of the '307 Patent is attached as Exhibit D.

66.     Lovesac owns the '307 Patent by assignment.

67.     Lovesac provided actual notice to Homebody of its infringement of the '307 Patent prior to the filing of this lawsuit.

68.     As a non-limiting example, set forth below is an exemplary infringement claim chart for claim 15 of the '307 Patent in connection with the Accused Products. This claim chart is based on publicly available information, and Lovesac reserves the right to modify this claim chart, including, for example, on the basis of information about the Accused Products that Lovesac obtains in discovery.

| US 10,143,307 | Homebody Recliners |
|---|---|
| | **Claim 15** |
| **15P.** A furniture system, comprising: | To the extent that the preamble is limiting, Homebody Recliners comprise a furniture system. <br><br>  <br><br> https://stayhomebody.com/products/grey-linen-6-seat-modular-couch-1-recliner |
| **15a.** a modular furniture assembly comprising **a base** and **a transverse member** that can be selectively coupled to each other; and | Homebody Recliners comprise a modular furniture assembly comprising a base and a transverse member that can be selectively coupled to each other. |



Homebody Recliner Assembly Video, https://youtu.be/yNozhKmfeLI?t=24 (hereinafter, "Homebody Recliner Assembly Video") (time at: 0:30).

| **15b.** a **reclining assembly** configured to be selectively coupled to the modular furniture assembly, wherein the reclining assembly is configured to be mounted adjacent to the modular furniture assembly such that the reclining assembly can be selectively coupled to the modular furniture assembly to form a sofa, | Homebody Recliners comprise a reclining assembly configured to be selectively coupled to the modular furniture assembly, wherein the reclining assembly is configured to be mounted adjacent to the modular furniture assembly such that the reclining assembly can be selectively coupled to the modular furniture assembly to form a sofa.  https://stayhomebody.com/products/sectional-loveseat-1-recliner-grey-linen |



[Homebody Recliner Assembly Video at 0:26](#).

| | |
|---|---|
| **15c.** wherein the reclining assembly comprises: **a base** configured to be mounted on a **support surface**, | Homebody Recliners comprise a reclining assembly with a base configured to be mounted on a support surface.<br><br> |

**15d.** the base comprising: (i) <span style="color:red">**a housing**</span>; and (ii) a <span style="color:blue">**footrest assembly**</span> that moves with respect to the housing, and wherein a <span style="color:green">**passageway**</span> extends between the housing and the footrest assembly such that a coupler is selectively mounted within the passageway and within a <span style="color:purple">**corresponding slit**</span> of the modular furniture assembly to thereby couple the reclining assembly to the modular furniture assembly.

Homebody Recliners comprise a base comprising: (i) a housing; and (ii) a footrest assembly that moves with respect to the housing, and wherein a passageway extends between the housing and the footrest assembly such that a coupler is selectively mounted within the passageway and within a corresponding slit of the modular furniture assembly to thereby couple the reclining assembly to the modular furniture assembly.





[Homebody Recliner Assembly Video at 0:59](#).



Homebody Recliner Assembly Video at 0:26.

69.     Additionally, Homebody has and continues to indirectly infringe the asserted claims of the '307 Patent, in violation of 35 U.S.C. § 271(b), by actively inducing users of the Accused Products to directly infringe the asserted claims of the '307 Patent. In particular, (a) Homebody has actual knowledge of the '307 Patent, at least because Lovesac notified Homebody of its infringement, (b) Homebody intentionally causes, urges, or encourages users of the Accused Products to directly infringe one or more claims of the '307 Patent by promoting, advertising, and instructing customers and potential customers about the Accused Products and uses thereof, including infringing uses (*see* Homebody Assembly Video), (c) Homebody knows (or should know) that its actions will induce users of Accused Products to directly infringe one or more claims the '307 Patent, and (d) users of the Accused Products directly infringe one or more claims of the '307 Patent.

70.     Additionally, has and continues to indirectly infringe one or more of the claims of the '307 Patent, in violation of 35 U.S.C. § 271(c), by offering to sell or selling within the United States, and/or importing into the United States, components in connection with the Accused Products that contribute to the direct infringement of the '307 Patent by users of the Accused

36

Products. In particular, (a) Homebody has actual knowledge of the '307 Patent, (b) Homebody offers for sale, sells, and/or imports, in connection with the Accused Products, one or more material components of the invention of the '307 Patent that are not staple articles of commerce suitable for substantial non-infringing use, (c) Homebody knows (or should know) that such component(s) were especially made or especially adapted for use in an infringement of the '307 Patent, and (d) users of devices that comprise such material component(s) directly infringe one or more claims of the '307 Patent.

71.     Homebody's infringement of the '307 Patent is also willful because Homebody (a) had actual knowledge of the '307 Patent, (b) engaged in the aforementioned activity despite an objectively high likelihood that Homebody's actions constituted infringement of the '307 Patent, and (c) this objectively-defined risk was either known or so obvious that it should have been known to Homebody.

72.     Additional allegations regarding Homebody's pre-suit knowledge of the '307 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

73.     Lovesac is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '307 Patent.

74.     Lovesac is entitled to recover from Homebody all damages that Lovesac has sustained as a result of Homebody's infringement of the '307 Patent, including, without limitation, a reasonable royalty and lost profits.

75.     Homebody's infringement of the '307 Patent was and continues to be willful and deliberate, entitling Lovesac to enhanced damages.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully prays that the Court enter judgment in its favor and award the following relief against the Defendant:

A. A judgment that Defendant has infringed one or more claims of the Asserted Patents literally and/or under the doctrine of equivalents;

B. An award of damages pursuant to 35 U.S.C. § 284;

C. Entry of an injunction against further infringement of the Asserted Patents;

D. A judgment that this is an exceptional case pursuant to 35 U.S.C. § 285 and an award of the Plaintiff's reasonable attorneys' fees in this litigation;

E. An award of prejudgment and post-judgment interest on Plaintiff's damages;

F. An award of costs; and

G. Any such other and further relief as the Court deems proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial on all matters triable to a jury.

|  |  |
|---|---|
| | */s/ Kelly E. Farnan* |
| OF COUNSEL: | Kelly E. Farnan (#4395) |
| Brian N. Platt | Sara M. Metzler (#6509) |
| Chad E. Nydegger | RICHARDS, LAYTON & FINGER, P.A. |
| Collin D. Hansen | One Rodney Square |
| **WORKMAN NYDEGGER** | 920 North King Street |
| 60 East South Temple Suite 1000 | Wilmington, DE 19801 |
| Salt Lake City, UT 84111 | (302) 651-7700 |
| (801) 533-9800 | farnan@rlf.com |
| bplatt@wnlaw.com | metzler@rlf.com |
| cnydegger@wnlaw.com | |
| chansen@wnlaw.com | *Attorneys for Plaintiff The Lovesac Company* |

Dated: January 24, 2024